(C. D. 127)

Pistorino & Co., Inc. v. United States

## United States Customs Court, Third Division

(Decided March 13, 1939)

*Joseph F. Lockett* for the plaintiff.

*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: These are two suits wherein the importer seeks to recover certain sums of money claimed to have been unlawfully exacted on importations of canned tomatoes that were entered at the port of Boston, Mass. The importer claims in each case that the liquidations were illegal and void inasmuch as they were based upon illegal and void appraisements, since said appraisements did not comply with the provisions of section 499 of the Tariff Act of 1930. The provisions of that section, so far as applicable, are as follows:

SEC. 499. * * * The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined. * * *

The two cases were tried separately but they were briefed together and the testimony makes cross references one to the other, so we will decide both in one opinion.

*Protest 938093-G.*—The entry in this case covers 1,000 cartons of canned tomatoes which arrived at the port of entry on September 30, 1935. Entry was made on November 7 of the same year. The summary of appraisement shows that the merchandise was appraised on February 3, 1937. Under the heading "Packages to be Examined" of the summary sheet the collector caused to be placed this notation: "Ex. one. Bal. 1 in 10 on Whf." The testimony shows that one carton was sent to the appraiser's stores. As to that the only testimony that was given as to the kind of examination was as follows:

Q. And who examined that?—A. I did.

Q. What did the examination consist of?—A. Opening the case, checking the contents, checking the labels, and opening one can to see if it was tomatoes.

The wharf examination was made by an examiner who had retired since the importation arrived and who was inclined to fence with the

attorney concerning the kind and character of his examination, as is disclosed by the following testimony:

Q. Now I show you the papers in this case, Collective Exhibit 1, and ask you if you know whether you were the wharf examiner on that merchandise?—A. I think so, yes, sir.

Q. Is there any doubt?—A. No, sir.

Q. I call your attention to the red stamp "Examination on wharf, R. H. H., Examiner"?—A. Yes, sir, I examined the goods.

Q. How many cases did you examine?—A. Ten per cent.

Q. How many did you open?—A. That depended on the condition of the case.

Q. How many did you open and examine of the 1,000 on this entry?—A. I opened enough to satisfy myself.

Q. But how many out of the 1,000 cases did you actually open and examine?—A. I don't know.

Q. Did you open 100 out of the thousand?—A. No, sir, probably not, but I would like to see the invoice first. (Witness looks at invoice.) I did not open 100 cases, but I examined over that number.

Thereafter his testimony indicated that in dutiable shipments of this character the boxes are broken and he could see from the broken boxes what the contents were. Again on page 12 of the stenographic minutes the following testimony was given by this witness:

Q. My question was whether you opened and examined one in ten of these cartons?—A. I examined 10 per cent of the shipment. I did not open all of these.

Q. You did not open and examine 10 per cent of the merchandise in these cartons?—A. No, sir.

The bookkeeper, treasurer, and manager of the importing concern kept a record of the merchandise as it arrived at their place of business for the purpose of knowing the conditions and of making claims in case of damage. He testified that there were 999 cartons received from entry 4027; that 4 cases were damaged and 47 cans were short. He already had testified that 1 case had been sent to the appraiser's stores.

The court thinks it is clear from the testimony that the wharf examiner simply satisfied himself by looking over the packages and that he failed to open and examine one in ten of the packages as he had been directed to do. Therefore with reference to this protest the examination was not such as is required by law and the regulations to have been made and the appraisement based thereon is illegal.

*Protest 938094–G.* On entry 6684, covered by protest 938094–G, the summary sheet contains the notation as follows, under "Packages to be examined:"

> Ex. One c/s ea size
> Bal. 1 in 10 on Whf.
> Including Cartons.

This merchandise arrived at the port of entry on November 21, 1935, and the report of examination is dated February 4, 1937. This

importation consisted of 1,833 cartons of tomatoes. It was stipulated that the examiner, Mr. Finnegan, examined one case out of each size, as ordered, and that there were two sizes, so that he opened and examined at the appraiser's stores two cases, and that his testimony as to the general examination is the same as that in protest 938093–G, *supra*. (It is observed that the testimony in the earlier case was not incorporated herein. However, both parties treated the situation as though such testimony had been incorporated with this record.)

There is a stamped notation on the face of the summary sheet "Examined on Wharf T. F. B. Examiner." The initials T. F. B. are the initials of Thomas F. Bird who testified that he did not make an examination of this merchandise on the wharf and that he did not know how his initials had been stamped on that and that they were stamped on there, in his estimation, after the examiner who made the examination had retired. An examination on the wharf was made by Mr. Ralph H. Haskins. He could not recollect when he made his examination and his testimony concerning the examination was as follows:

Q. Now this entry, you will notice, covers 1,833 cartons of canned tomatoes?—A. Yes, sir.

Q. How many did you open and examine for the purpose of appraisement?—A. I examined 10 per cent.

Q. Did you open 10 per cent for the purpose of examination?—A. I would not say that I opened, but I examined 10 per cent.

Q. That is not an answer. I will ask you again. How many cases did you open and examine out of the 1,833 cartons covered by entry 6684, the subject of this case?—A. I have made the statement that I examined 10 per cent of them.

Q. Did you open them?

Judge Tilson. He said he did not open 10 per cent but that he did examine 10 per cent.

Q. What did your examination consist of?—A. Opening the cartons and looking at the cans of tomatoes and seeing how they were labeled and marked.

Q. Did you make any record of this examination?—A. Yes, sir.

Q. Where is that?—A. On this book we kept in this drawer.

Q. Do you think you could find the book covering this shipment?—A. I could but it may be upstairs.

Q. Would that show how many you opened and examined?—A. No, sir.

Q. What would it show?—A. The invoice number, and show that I had examined the merchandise.

Q. How would you know from looking at the book how many cases you examined, or opened and examined?—A. I would not know.

It is our judgment that the same character of wharf examination was made of the merchandise on this entry as in the entry covered by protest 938093–G, that is, that it consisted of a superficial examination of the cartons and that the examiner did not open and examine 10 per centum of the packages as he had been directed to do. We therefore find that the appraisement was not in accordance with the mandatory terms of the statute and that the liquidation based thereon was illegal, as claimed by the plaintiff.

We therefore hold that as to each of the protests duty should be assessed on the entered value.

Judgment will be rendered accordingly. It is so ordered.